# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1240

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Arkansas. |
| | * | |
| Yvonne A. Dockery, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: November 14, 2011
Filed: November 21, 2011

_____

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A jury found Yvonne A. Dockery guilty of three counts of mail fraud. The District Court[1] sentenced Dockery to thirty months in prison and ordered her to pay $128,414.21 in restitution. On appeal, she challenges her convictions and her sentence. We affirm.

Dockery first argues that the evidence presented at trial was insufficient to prove that she had the necessary intent to commit fraud. Intent, an element of the

_____

[1] The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

offense, need not be proved by direct evidence—the defendant's admission—but may be "inferred from the defendant's actions." United States v. Onwumere, 530 F.3d 651, 653 (8th Cir. 2008). We review de novo, viewing the evidence in the light most favorable to the verdict and drawing reasonable inferences in the government's favor. Id.

The charges against Dockery resulted from activities she undertook while serving as mayor of Garland, Arkansas. Among other things, Dockery issued checks drawn on an account for the Garland volunteer fire department to city employees and instructed those employees to cash the checks and give her the money. She created false invoices documenting fictitious purchases in order to account for the cash and mailed the invoices to the Arkansas Division of Legislative Audit, which was investigating the missing funds. Dockery also was involved in contracting with First Government Leasing Company in Chicago to provide financing for the lease or purchase of three patrol cars, a fire truck, and firefighting equipment from local vendors. She represented to First Government Leasing that she had city council approval for the loans when she knew she did not, thus obligating Garland on those loan contracts. First Government Leasing sent checks to the vendors to pay for the vehicles and equipment. Dockery then cancelled the lease-purchase contracts with the local suppliers and personally collected and retained the refunds, and the firefighting equipment she says she purchased could not be accounted for. We conclude, after careful review, that Dockery's actions provide ample evidence of her intent to commit fraud.

Dockery also contends that the District Court miscalculated the amount of loss under the U.S. Sentencing Guidelines, thus resulting in a sentence that is "substantively unreasonable, an abuse of discretion, and not supported by the evidence." Br. of Appellant at 15. By this statement, it appears that Dockery is alleging both procedural sentencing error on the part of the District Court and that her sentence is substantively unreasonable. Her argument, however, is directed to the

-2-

court's calculation of her offense level, which is an allegation of procedural error. See Gall v. United States, 552 U.S. 38, 51 (2007) (noting that improper calculation of the Guidelines range is a procedural sentencing error). When calculating loss resulting from fraud under § 2B1.1 of the Guidelines, a district court need only make a reasonable estimate of the amount of loss, as shown by a preponderance of the evidence. United States v. Parish, 565 F.3d 528, 534 (8th Cir. 2009). For sentencing purposes, the amount of loss will be the greater of the actual or intended loss. Id. We review the court's estimate of loss for clear error, giving the court appropriate deference based on its familiarity with the evidence in the case. Id.

At sentencing, the District Court, over Dockery's objection, adopted the Presentence Investigation Report's amount-of-loss calculation of $128,414.21: $42,400.00 for the cash she received from the volunteer-fire-department account and $86,014.21 ($40,000.00 for the police cruisers, $46,014.21 for the fire truck and equipment) for the loans Dockery arranged—and fraudulently obligated Garland to pay—for the cost of leasing or purchasing the vehicles and equipment. The court ordered Dockery to pay restitution to Garland in this amount. The amount of loss also resulted in a ten-level increase to Dockery's base-offense level under the Guidelines.

Dockery does not dispute the loss amounts, and there is ample testimonial and documentary evidence of those amounts in the record. Instead, the substance of her argument is that Garland received three police cars and a fire truck before the city defaulted on the First Government Leasing contracts "and the vehicles could be found and sold, reducing the amount of loss." Br. of Appellant at 15. But Dockery testified that the police cars and fire truck "broke," that the police chief had taken the cars, and that the cars had been repossessed when the city defaulted on the contracts and was sued. See Tr. at 417, 419. Apparently, there are no vehicles to be "found and sold," and the record contains no evidence to the contrary. At sentencing, the government represented to the court that "even if the cars were sold at a later date, . . . there has

never been an offset to these contracts." Id. at 554. The District Court did not clearly err in including the full amounts of the fraudulently obtained loans in its estimation of actual loss.

Even if the actual loss had been offset, $128,414.21 is also the amount of the intended loss. As the greater amount, this intended loss would apply for sentencing purposes.[2] Dockery fraudulently obligated Garland to pay the full amount of the loans by representing that she had city council approval when she did not. The full amount of the loans is therefore the "maximum loss" that a reasonable person in Dockery's position at the time of the fraud could have intended. United States v. Staples, 410 F.3d 484, 490 (8th Cir. 2005). This is not a situation where "the facts warrant" subtracting the value of collateral from the intended loss, as in the case of a house, which "cannot be hidden like a car or other mobile form of security." Id. at 491. Recovery of the vehicles and equipment was not inevitable in this case.

In sum, the court did not clearly err in its calculation of the amount of loss, and we defer to its finding.

To the extent Dockery challenges the substantive reasonableness of her sentence, the District Court did not abuse its discretion in sentencing her to thirty months in prison, the low end of the Guidelines range. See Gall, 552 U.S. at 51 (standard of review).

We affirm Dockery's conviction and sentence.

_____

[2]Restitution would be based on actual, not intended, loss, United States v. Lange, 592 F.3d 902, 907 (8th Cir. 2010), but Dockery's sentencing challenge is to "[t]he ten (10) level increase based on the amount of loss finding handed down by the Court," not to the restitution order, Br. of Appellant at 1, 15.